UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x
                                       :
UNITED STATES OF AMERICA,
                                       :
                 Plaintiff,
                                       :
           -v.-
                                       :
CHF 2,362,717.30 in Swiss currency                    **VERIFIED COMPLAINT**
currently on deposit in Credit Suisse  :              **FOR FORFEITURE**
(Switzerland) AG account number 0835-
1358577-50 held in the name of Roland  :              20 Civ. ___ (___)
Mathys, and all assets currently on
deposit in Credit Suisse               :
(Switzerland) AG account number 0835-
1358577-52-6 held in the name of       :
Roland Mathys,
                                       :
And all property traceable thereto,
                                       :
                 Defendants-in-rem.
                                       :
- - - - - - - - - - - - - - - - - - - x

        Plaintiff the United States of America (the "Government"), by

its attorney Geoffrey S. Berman, United States Attorney for the

Southern District of New York, for its verified complaint (the

"Complaint") alleges, upon information and belief, as follows:

## INTRODUCTION

        1.   By this Complaint, the Government seeks forfeiture of

all right, title and interest in the following property:

        a.   CHF 2,362,717.30 in Swiss currency currently on

             deposit in Credit Suisse (Switzerland) AG account

             number 0835-1358577-50 held in the name of Roland

1

Mathys (the "Swiss Franc Assets"), and

b.   All assets currently on deposit in Credit Suisse
(Switzerland) AG account number 0835-1358577-52-6 held
in the name of Roland Mathys (the "U.S. Dollar
Assets"),

and all property traceable thereto (collectively, the "Defendant
Property").

2.    The Defendant Property is subject to forfeiture
pursuant to 18 U.S.C. § 981(a)(1)(C) as property constituting
the proceeds of fraud in the sale of securities, specifically an
insider-trading scheme.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant
to 28 U.S.C. §§ 1345 and 1355(a) and (b)(1)(A).

4.    Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A)
because acts and omissions giving rise to the forfeiture took
place in the Southern District of New York.

### RELEVANT ENTITIES AND INDIVIDUALS

5.    At all times relevant to this Complaint, Bioverativ,
Inc. ("Bioverativ") was a multinational biotechnology company
headquartered in Waltham, Massachusetts that specialized in the
development and commercialization of therapies for the treatment
of hemophilia. Bioverativ's stock was traded under the ticker

symbol "BIVV" on the NASDAQ Stock Exchange, which is located in New York.

6.    At all times relevant to this Complaint, Sanofi S.A. ("Sanofi") was a multinational pharmaceutical company headquartered in Paris, France that engaged in the research, development, manufacturing and marketing of pharmaceutical drugs, principally in the prescription market.

7.    At all times relevant to this Complaint, Roland Mathys was a citizen of Switzerland.

8.    At all times relevant to this Complaint, an individual not named herein ("Individual-1") was a citizen of Switzerland and Italy, and an Executive Vice President of Sanofi in Paris, France. Individual-1 was an acquaintance of Mathys. A second individual not named herein ("Individual-2") was a family member of Individual-1 and a citizen of Switzerland and Italy. Individual-2 was a close personal friend of Mathys.

9.    From on or about January 12, 2018 through on or about January 19, 2018, Mathys executed and caused to be executed, through a Swiss franc-denominated brokerage account that he maintained at Credit Suisse (Switzerland) Ltd. ("CS Ltd.") with account number 0835-1358577-50 (the "CS Swiss Franc Account"), multiple purchases of Bioverativ call options, based on material, non-public information he had learned about Bioverativ, which was to be the subject of a tender offer by

3

Sanofi. Mathys had received the material, non-public information relating to the tender offer from Individual-2, knowing that Individual-2 had received the material, non-public information from Individual-1, a Sanofi insider.

## THE INDICTMENT

10. On or about June 13, 2019, Mathys was charged by a grand jury in the Southern District of New York in a one-count Indictment, *United States v. Mathys*, 19 Cr. 442 (DLC) (the "Indictment," a copy of which is attached as Exhibit A, and incorporated herein by reference) with fraud in connection with a tender offer, in violation of Title 15, United States Code, Sections 78n(e) & 78ff; Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d); and Title 18, United States Code, Section 2.

11. The Indictment further alleged that, as the result of committing the offense charged, Mathys shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense and all property traceable to such property, including but not limited to a sum of money of at least $4,798,355.98 in United States currency. (*See id.* ¶ 31).

### Background to Sanofi's Tender Offer for Bioverativ Shares

12. From at least on or about November 3, 2017 through on or about January 21, 2018, representatives of Sanofi and representatives of Bioverativ engaged in confidential negotiations regarding Sanofi's proposal offering to acquire all outstanding shares of Bioverativ. (*See* Indictment ¶¶ 8 through 14).

13. On or about January 22, 2018, prior to the opening of the financial markets in Paris and New York, Sanofi and Bioverativ issued a joint press release announcing the signing of a merger agreement, pursuant to which Sanofi would commence a tender offer within 15 business days to acquire all of the outstanding shares of common stock of Bioverativ, at a purchase price of USD $105.00 per share (the "Tender Offer"), which represented a premium of approximately 64% over Bioverativ's closing price the prior trading day (the "Announcement"). (*See id.* ¶¶ 14 and 15).

### Individual-1 Learns MNPI Through His Employment at Sanofi

14. On or before January 7, 2018, Individual-1, in connection with his employment at Sanofi, learned that an acquisition of Bioverativ by Sanofi was being negotiated, that such an acquisition was likely to happen, and that such an acquisition would take place in the near future, which

information was material non-public information ("MNPI") that
Individual-1 had a duty to keep confidential. (*See id.* ¶ 17).

### Individual-2 Obtains MNPI from
### Individual-1 and Relays it to Mathys

15.  On or about January 8, 2018, during a telephone
conversation, Individual-1 disclosed to Individual-2 MNPI
regarding Sanofi's planned acquisition of Bioverativ.
Specifically, Individual-1 told Individual-2, in sum and
substance, that Sanofi was acquiring a Boston-based biotech
company involved in developing a hemophilia drug. (*See id.* ¶
18).

16.  Between on or about January 8, 2018 and on or about
January 12, 2018, Individual-2 disclosed to Mathys MNPI
regarding Sanofi's planned acquisition and the fact that
Individual-2 had learned the MNPI from Individual-1. Based on
Mathys's prior dealings with Individual-1, Mathys knew that
Individual-1 was an Executive Vice President at Sanofi. (*See id.*
¶ 19).

### Mathys Trades in Bioverativ Call Options
### While in Possession of MNPI About the Acquisition

17.  From on or about January 12, 2018 through on or about
January 19, 2018, Mathys, through the CS Swiss Franc Account,
purchased approximately 1,607 Bioverativ call option contracts,
all with an expiration date of February 16, 2018, for a total
purchase price of approximately USD $170,071. These purchases

were executed in the United States through one or more omnibus
trading accounts that CS Ltd. maintained at Credit Suisse
Securities (USA) LLC in New York, New York ("CSSU" the "CSSU
Accounts"). (*See id.* ¶¶ 3, 4, and 20).

18. From on or about January 12, 2018 through on or about
January 19, 2018, the purchases of Bioverativ call options by
Mathys constituted a significant percentage of the trading in
Bioverativ call options on each day, as shown in the table in
the Indictment. (*See id.* ¶¶ 21 and 22).

### The Acquisition is Announced, and Bioverativ's Share Price Increases by Approximately 62%

19. On or about January 22, 2018, following the
Announcement, Bioverativ shares opened trading at USD $104.21
per share, reached an intra-day high of USD $104.30 per share,
and closed at USD $103.79 per share, an increase of
approximately 62% over the closing price on the prior trading
day. Since Bioverativ shares had begun trading on NASDAQ in
January 2017, they had never closed at or above USD $64.12. (*See
id.* ¶ 23).

### Mathys's Insider Trading Generates an Illicit Profit of Over USD $4.7 Million, Including the Defendant Property

20. On or about January 22, 2018, Mathys sold
approximately 732 Bioverativ call option contracts (the "First
Sale") for a net profit of approximately Swiss Francs ("CHF")
2,362,717.30. The First Sale was executed through one or more

7

CSSU Accounts. The total costs and fees associated with the purchase of all 1,607 BIVV call options, approximately $170,071, were subtracted from the proceeds of the First Sale, resulting in CHF 2,362,717.30 of net profit from the First Sale. On or about January 23, 2018, the net profit from the First Sale was credited to the CS Swiss Franc Account. (See id. ¶ 24).

21.    On or about January 23, 2018, a United States dollar-denominated brokerage account in Mathys's name was opened at CS Ltd. (the "CS U.S. Dollar Account"). Between on or about January 23, 2018, and January 26, 2018, Mathys exercised 325 Bioverativ call option contracts (the "Second Sale"). On or about February 16, 2018, pursuant to a U.S. court order described below, the remaining 550 Bioverativ call options were exercised (the "Third Sale"). The combined net profit of the Second Sale and the Third Sale was $2,463,229.26. (See id. ¶ 25).

22.    The Second and Third Sales were executed through one or more CSSU Accounts. Because the costs and fees associated with the purchase of the 1,607 BIVV options were deducted from the proceeds of the First Sale in the CS Swiss Franc Account, the proceeds from the Second and Third Sales constituted the net profits from the Second and Third Sales. On or about January 24, 2018, January 29, 2018, and February 19, 2018, the net profits from the Second and Third Sales were credited to the CS U.S. Dollar Account.

23.   On or about January 26, 2018, at the request of his relationship manager at CS Ltd. (the "CS Relationship Manager"), Mathys executed a declaration in which he represented that (translated from German):

> [His transactions in Bioverativ call options] were only based on publicly available information and/or personal market analysis, and no insider information was used in the sense of Art. 2 let. F of the Federal Law for Markets and Securities Trading. I additionally state that at no time was I in possession of insider information (i.e. confidential information whose knowledge could significantly influence the price of securities traded on markets) in connection with the aforementioned companies and/or related companies.

(*See id.* ¶ 26).

24.   Also on or about January 26, 2018, Mathys stated to the CS Relationship Manager, in sum and substance and among other things, that Mathys was extremely surprised by the developments relating to Bioverativ, that he had nothing to do with Bioverativ or Sanofi, and that he did not have any information relating to Bioverativ's acquisition when he purchased Bioverativ options. (*See id.* ¶ 27).

25.   Between on or about February 8, 2018 and February 10, 2018, Mathys acknowledged to Individual-2, in sum and substance, that Mathys had traded in Bioverativ based on the MNPI that Mathys had obtained from Individual-2. (*See id.* ¶ 29).

26.   On or about January 26, 2018, the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York, *SEC v. One or More Unknown Traders in the Securities of Bioverativ, Inc.*, 18 CV 701 (JGK) (the "SEC Action"), and obtained a temporary restraining order against the Defendant Property. In connection with the SEC Action, on or about February 8, 2018, the SEC obtained a preliminary injunction freezing, *inter alia*, the Defendant Property (the "Preliminary Injunction"). (*See id.* ¶ 28). In connection with the SEC Action, on or about February 15, 2018, the SEC obtained an order authorizing the exercise of any remaining Bioverativ options belonging to Mathys in the CSSU Account and the sale of the resulting shares (the "February 15, 2018 Order"), the proceeds of which were credited to the CS U.S. Dollar Account.

27.   As of the date of the filing of this Complaint, Mathys has not been arrested and remains a fugitive. Upon information and belief, Mathys is located in Switzerland, is aware of the charge against him, but does not intend to come to the United States to face the charge in the Indictment, and will not be arrested and extradited by the government of Switzerland on the charge in the Indictment.

## THE DEFENDANT PROPERTY

28. A review of bank records for the CS Swiss Franc
Account, the CS U.S. Dollar Account, and the CSSU Accounts, as
well as correspondence from CS Ltd., revealed that the CS Swiss
Franc Account and the CS U.S. Dollar Account were credited
proceeds traceable to the insider-trading scheme, as alleged in
the Indictment. Review of bank and other financial records also
revealed, among other things:

a. On or about January 22, 2018, Mathys sold 732
Bioverativ call option contracts for a net profit of
approximately CHF 2,362,717.30. On or about January
23, 2018, the net profit from the First Sale was
credited to the CS Swiss Franc Account; these funds
constitute the "Swiss Franc Assets".

b. Since January 23, 2018, the CS Swiss Franc Account has
maintained a balance of at least CHF 2,362,717.30.

c. On or about January 31, 2018, in coordination with the
SEC, the Swiss Federal Office of Justice("FOJ")
implemented a blocking order that restrained the Swiss
Franc Assets (the "Blocking Order"). As of November
2019, pursuant to the Blocking Order, the Swiss Franc
Assets were restrained in the CS Swiss Franc Account.

d. On or about January 23, 2018, the CS U.S. Dollar
Account was opened with a zero dollar balance. Between

11

on or about January 23, 2018, and January 26, 2018, Mathys exercised 325 Bioverativ call option contracts (the "Second Sale"). On or about February 16, 2018, pursuant to the February 15, 2018 Order, the remaining 550 Bioverativ call options were exercised and the resulting Bioverativ shares were sold (the "Third Sale"). The combined net profits of the Second and Third Sales were $2,463,229.26. (*See id.* ¶ 25).

e.  On or about January 24, 2018, January 29, 2018, and February 19, 2018, the net profits from the Second and Third Sales were credited to the CS U.S Dollar Account. The only assets that the CS U.S. Dollar Account has contained since its inception are the profits from Mathys's insider trading in Bioverativ call options, or property traceable to such profits. Therefore, all assets currently held in the CS U.S. Dollar Account constitute the U.S. Dollar Assets.

f.  On or about February 19, 2018, in coordination with the SEC, the Swiss FOJ extended the Blocking Order to the U.S. Dollar Assets. As of November 2019, pursuant to the Blocking Order, the U.S. Dollar Assets were restrained in the CS U.S. Dollar Account.

g.   On or about February 8, 2018, the Preliminary

Injunction was transmitted via official governmental

channels to the Swiss FOJ.

29.   Accordingly, the Swiss Franc Assets and the U.S.

Dollar Assets, and any other property traceable to the U.S.

Dollar Assets or the Swiss Franc Assets, are forfeitable

pursuant to Title 18, United States Code, Section 981(a)(1)(C).

## FIRST CLAIM
## (FORFEITURE UNDER 18 U.S.C. §§ 981(a)(1)(C))

30.   The Government incorporates by reference paragraphs 1

through 29 above as if fully set forth herein.

31.   Title 18, United States Code, Section 981(a)(1)(C)

subjects to forfeiture:

> [a]ny property, real or personal, which
> constitutes or is derived from proceeds
> traceable to . . . any offense constituting
> "specified unlawful activity" (as defined in
> section 1956(c)(7) of this title), or a
> conspiracy to commit such offense.

32.   Title 18, United States Code, Section 1956(c)(7)(D)

provides that the term "specified unlawful activity" includes

"fraud in the sale of securities," such as the insider-trading

scheme charged in Count One of the Indictment.

33.   The Defendant Property constitutes proceeds of the

insider-trading scheme alleged above and therefore is subject to

forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## REQUEST FOR RELIEF

WHEREFORE plaintiff, the United States of America, requests that judgment be entered as follows:

a.   Enter judgment against the Defendant Property, and in favor of the United States, on the first claim alleged in the Complaint;

b.   Issue process to enforce the forfeiture of the Defendant Property, requiring that all persons having an interest in the Defendant Property be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant Property to the United States of America for disposition according to law; and

c.   Grant the Government such further relief as this Court may deem just and proper, together with the costs and disbursements in this action.

Dated:   New York, New York
         January 21 , 2020

                              GEOFFREY S. BERMAN
                              United States Attorney

                         By:  _____
                              CHRISTINE I. MAGDO
                              Assistant United States Attorney
                              One Saint Andrew's Plaza
                              New York, New York 10007
                              Telephone: (212) 637-2297
                              Facsimile: (212) 637-2452
                              E-mail: christine.magdo@usdoj.gov

**VERIFICATION**

STATE OF NEW YORK            )
COUNTY OF NEW YORK           :
SOUTHERN DISTRICT OF NEW YORK )

PATRICK ZIELINSKI duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, and as such has responsibility for the within action; that he has read the foregoing Verified Complaint and knows the contents thereof, and that the same is true to the best of his knowledge, information, and belief.

The sources of deponent's information and the ground of his belief are official records and files of the United States, information obtained directly by the deponent, and information obtained by other law enforcement officials and representatives during an investigation of alleged violations of Title 15, United States Code.

_____
PATRICK ZIELINSKI
Special Agent
Federal Bureau of Investigation


Sworn to before me this
____ day of January, 2020:

_____
NOTARY PUBLIC


KEVIN C. GORMAN
Notary Public, State of New York
No. 02GO6161201
Qualified in Putnam County
Commission Expires February 20, 2023

15

# Exhibit A

Indictment
*United States v. Roland Mathys*,
19 Cr. 442 (DLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

                               :

UNITED STATES OF AMERICA

                               :

        - v. -

                               :       **INDICTMENT**

ROLAND MATHYS,

                               :       19 Cr.

              Defendant.

                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## COUNT ONE
### (Fraud in Connection with a Tender Offer)

    The Grand Jury charges:

### Relevant Entities and Individuals

    1.   At all times relevant to this Indictment, Bioverativ,
Inc. ("Bioverativ") was a multinational biotechnology company
headquartered in Waltham, Massachusetts that specialized in the
development and commercialization of therapies for the treatment
of hemophilia. Bioverativ's stock was traded under the ticker
symbol "BIVV" on the NASDAQ Stock Exchange.

    2.   At all times relevant to this Indictment, Sanofi S.A.
("Sanofi") was a multinational pharmaceutical company
headquartered in Paris, France that engaged in the research,
development, manufacturing and marketing of pharmaceutical
drugs, principally in the prescription market.

3.   At all times relevant to this Indictment, Credit Suisse Securities (USA) LLC ("CSSU") was a broker-dealer based in New York, New York.

4.   At all times relevant to this Indictment, Credit Suisse (Switzerland), Ltd. ("CS Ltd.") was based in Zurich, Switzerland and provided securities brokerage and investment banking services to its customers. CS Ltd. maintained omnibus trading accounts with CSSU (the "CSSU Accounts").

5.   At all times relevant to this Indictment, an individual not named as a defendant herein ("Individual-1") was a citizen of Switzerland and Italy, and an Executive Vice President of Sanofi in Paris, France. A second individual not named as a defendant herein ("Individual-2") was a family member of Individual-1 and a citizen of Switzerland and Italy.

6.   At all times relevant to this Indictment, ROLAND MATHYS, the defendant, was a citizen of Switzerland, was a close personal friend of Individual-2 and an acquaintance of Individual-1, and maintained a brokerage account at CS Ltd.

**Background to Sanofi's Tender Offer for Bioverativ Shares**

7.   On or about November 3, 2017, Sanofi delivered to Bioverativ a non-binding proposal offering to acquire all outstanding shares of Bioverativ at a price of $98.50 per share in cash.

- 2 -

8.   On or about December 5, 2017, Sanofi and Bioverativ entered into a confidentiality agreement regarding the acquisition negotiations.

9.   On or about December 18, 2017, representatives of Sanofi and Bioverativ met in New York, New York for a management presentation, which included a review of Bioverativ's business, products and pipeline, operations, and projections.

10.  On or about January 4, 2018, Sanofi indicated that it would be willing to pursue an acquisition of Bioverativ at a price of $105 per share, subject to Sanofi's successful completion of due diligence and Bioverativ's agreement to engage exclusively with Sanofi.

11.  On or about January 6, 2018, Sanofi and Bioverativ executed an exclusivity agreement, which provided Sanofi with the right, through January 26, 2018, to negotiate exclusively the potential acquisition of all the outstanding shares of Bioverativ at the price of $105 per share.

12.  From on or about January 8, 2018 through on or about January 21, 2018, Sanofi conducted a due diligence review of Bioverativ.

13.  On or about Friday, January 19, 2018, Sanofi's Board of Directors met and approved the proposed terms of the acquisition. Bioverativ shares closed that day at a price of $64.11.

14.  On or about the evening of Sunday, January 21, 2018, Sanofi and Bioverativ entered into a merger agreement (the "Merger Agreement"). Pursuant to the Merger Agreement, Sanofi would commence a tender offer no later than 15 business days after the date of the Merger Agreement, to acquire all of the outstanding shares of common stock of Bioverativ, at a purchase price of $105.00 per share (the "Tender Offer"), which represented a premium of approximately 64% over Bioverativ's closing price the prior trading day.

15.  On or about the morning of Monday, January 22, 2018, prior to the opening of the financial markets in Paris and New York, Sanofi and Bioverativ issued a joint press release announcing the signing of the Merger Agreement (the "Announcement").

16.  On or about February 7, 2018, Sanofi commenced the Tender Offer. On or about March 8, 2018, Sanofi announced that the minimum tender conditions had been satisfied, Sanofi accepted for payment all BIVV shares that were validly tendered, and the merger was effected.

- 4 -

### Individual-1 Learns MNPI Through His Employment at Sanofi

17.  On or before January 7, 2018, Individual-1, in
connection with his employment at Sanofi, learned that an
acquisition of Bioverativ by Sanofi was being negotiated, that
such an acquisition was likely to happen, and that such an
acquisition would take place in the near future, which
information was material non-public information ("MNPI") that
Individual-1 had a duty to keep confidential.

### Individual-2 Obtains MNPI from<br>Individual-1 and Relays it to MATHYS

18.  On or about January 8, 2018, during a telephone
conversation, Individual-1 disclosed to Individual-2 MNPI
regarding Sanofi's planned acquisition of Bioverativ.
Specifically, Individual-1 told Individual-2, in sum and
substance, that Sanofi was acquiring a Boston-based biotech
company involved in developing a hemophilia drug.

19.  Between on or about January 8, 2018 and on or about
January 12, 2018, Individual-2 disclosed to ROLAND MATHYS, the
defendant, MNPI regarding Sanofi's planned acquisition and the
fact that Individual-2 had learned the MNPI from Individual-1.
Based on MATHYS's prior dealings with Individual-1, MATHYS knew
that Individual-1 was an Executive Vice President at Sanofi.

### MATHYS Trades in Bioverativ Call Options
### While in Possession of MNPI About the Acquisition

20.   From on or about January 12, 2018 through on or about January 19, 2018, ROLAND MATHYS, the defendant, through an account that he held at CS Ltd. (the "CS Ltd. Account"), purchased approximately 1,607 Bioverativ call option contracts, all with an expiration date of February 16, 2018, for a total purchase price of approximately $170,071. These purchases were executed in the United States through one or more of the CSSU Accounts.

21.   From on or about January 12, 2018 through on or about January 19, 2018, the purchases of Bioverativ call options by ROLAND MATHYS, the defendant, constituted a significant percentage of the trading in Bioverativ call options on each day, as shown in the table below.

22.   Specifically, ROLAND MATHYS, the defendant, purchased the following Bioverativ call option contracts:

| Date of purchase | Number of call option contracts purchased | Strike price | Average premium paid | Percentage of trading by MATHYS |
|---|---|---|---|---|
| 1/12/18 | 342 | $65 | $2.44 | 75% |
| 1/12/18 | 370 | $70 | $0.79 | 82% |
| 1/12/18 | 100 | $75 | $0.59 | 96% |
| 1/16/18 | 100 | $75 | $0.80 | 97% |
| 1/17/18 | 20 | $65 | $2.29 | 32.2% |
| 1/17/18 | 100 | $75 | $0.50 | 95% |
| 1/18/18 | 300 | $75 | $0.59 | 100% |
| 1/19/18 | 275 | $75 | $0.56 | 50% |

**The Acquisition is Announced, and Bioverativ's
Share Price Increases by Approximately 62%**

23.    On or about January 22, 2018, following the
Announcement, Bioverativ shares opened trading at $104.21 per
share, reached an intra-day high of $104.30 per share, and
closed at $103.79 per share, an increase of approximately 62%
over the closing price on the prior trading day. Since
Bioverativ shares had begun trading on NASDAQ in January 2017,
they had never closed at or above $64.12.

- 7 -

## MATHYS's Insider Trading Generates an Illicit Profit of Over $4.7 Million

24.  On or about January 22, 2018, ROLAND MATHYS, the
defendant, sold all the Bioverativ call option contracts that
had a strike price of $65 or $70, for a net profit of
approximately $2,518,622.70. MATHYS's trades were executed
through one or more CSSU Accounts, and the proceeds were then
transferred to the CS Ltd. Account.

25.  On or about January 23 and 26, 2018, ROLAND MATHYS,
the defendant, sold 325 Bioverativ call option contracts with a
strike price of $75, for a net profit of approximately
$711,000.81. Those proceeds remain in the CSSU Accounts.

26.  On or about January 26, 2018, at the request of his
relationship manager at CS Ltd. (the "CS Relationship Manager"),
ROLAND MATHYS, the defendant, executed a declaration in which he
represented that (translated from German):

> [His transactions in Bioverativ call options] were only
> based on publicly available information and/or personal
> market analysis, and no insider information was used in the
> sense of Art. 2 let. F of the Federal Law for Markets and
> Securities Trading. I additionally state that at no time
> was I in possession of insider information (i.e.
> confidential information whose knowledge could
> significantly influence the price of securities traded on
> markets) in connection with the aforementioned companies
> and/or with related companies.

27.  Also on or about January 26, 2018, ROLAND MATHYS, the
defendant, stated to the CS Relationship Manager, in sum and

- 8 -

substance and among other things, that MATHYS was extremely
surprised by the developments relating to Bioverativ, that he
had nothing to do with Bioverativ or Sanofi, and that he did not
have any information relating to Bioverativ's acquisition when
he purchased Bioverativ options.

28. On or about February 8, 2018, the Securities and
Exchange Commission (the "SEC") obtained a preliminary
injunction freezing the approximately $2,518,622.70 in proceeds
held in the CS Ltd. Account and the approximately $711,000.81 in
proceeds held in the CSSU Accounts (the "Preliminary
Injunction"). On or about February 14, 2018, the District Court
issued an order permitting the SEC to direct the liquidation of
the remaining 550 Bioverativ call option contracts, and, on or
about February 16, 2018, the liquidation of the remaining 550
Bioverativ call option contracts resulted in net profits of
approximately $1,568,732.47, which were frozen in the CSSU
Accounts pursuant to the Preliminary Injunction.

29. Between on or about February 8, 2018 and February 10,
2018, ROLAND MATHYS, the defendant, acknowledged to Individual-
2, in sum and substance, that MATHYS had traded in Bioverativ
based on the MNPI that MATHYS had obtained from Individual-2.

## Statutory Allegation

30.  From on or about January 12, 2018 through on or about January 19, 2018, in the Southern District of New York and elsewhere, ROLAND MATHYS, the defendant, willfully and knowingly engaged in fraudulent, deceptive, and manipulative acts and practices in connection with a tender offer, in that after the offering person had taken substantial steps to commence a tender offer, MATHYS, while in possession of material information relating to such tender offer, which information MATHYS knew and had reason to know was non-public and which he knew and had reason to know had been acquired directly and indirectly from the offering person, the issuer of the securities sought and to be sought by such tender offer, and an officer, director, partner, and employee and other person acting on behalf of the offering person and such issuer, purchased and sold and caused to be purchased and sold such securities, and securities convertible into and exchangeable for any such securities, and options and rights to obtain and to dispose of any of the foregoing securities, without public disclosure by press release and otherwise of such information and its source having been made within a reasonable time prior to any purchase and sale, to wit, MATHYS executed and caused to be executed purchases of Bioverativ call options, based on material, non-public

- 10 -

information about Bioverativ, which was to be the subject of a
tender offer.

(Title 15, United States Code, Sections 78n(e) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and
240.14e-3(d); and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

31.   As the result of committing the offense charged in
Count One of this Indictment, ROLAND MATHYS, the defendant,
shall forfeit to the United States, pursuant to Title 18, United
States Code, Section 981(a)(1)(C) and Title 28, United States
Code, Section 2461, all property, real and personal, that
constitutes or is derived from proceeds traceable to the
commission of the offense and all property traceable to such
property, including but not limited to:

a.   A sum of money of at least $4,798,355.98 in United
States currency.

## Substitute Asset Provision

32.   If any of the above-described forfeitable property, as
a result of any act or omission of the defendant,

b.   cannot be located upon the exercise of due
diligence;

b.   has been transferred or sold to, or deposited
with, a third person;

- 11 -

    c.   has been placed beyond the jurisdiction of the

         Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which

         cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of the defendant up to the value of the

forfeitable property described above.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21,
United States Code, Section 853(p); and Title 28, United States
Code, Section 2461.)


_____      _____
FOREPERSON                GEOFFREY S. BERMAN
                            United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

- v. -

ROLAND MATHYS,

Defendant.

---

### INDICTMENT

19 Cr. _____

(15 U.S.C. §§ 78n(e) & 78ff;
17 C.F.R. §§ 240.14e-3(a) and
240.14e-3(d); and 18 U.S.C. § 2.)

---

GEOFFREY S. BERMAN
United States Attorney

_Foreperson_

---

06/13/19

(CA)

INDICTMENT FILED W/ ARREST WARRANT
WHERE A - DJ COTE

KH PARKER
USMJ